Henry WILLIAMS, Petitioner,

v.

Louie L. WAINWRIGHT, Respondent.

No. 83–8169–CIV–JAG.

United States District Court,
S.D. Florida, N.D.

Jan. 12, 1984.

Lydia Valenti, West Palm Beach, Fla., for State, respondent.

Richard Jorandby, West Palm Beach, Fla., for petitioner.

## ORDER

GONZALEZ, District Judge.

### I.

THIS CAUSE arises out of the conviction of Petitioner, Henry Williams, on two counts of selling cocaine.[1] At the outset of the trial, Petitioner moved to sever the two counts, claiming they "were [neither] based on the same act or transaction, nor ... connected acts or transactions." Initial Brief of Appellant, at 2 (filed ca. Feb. 11, 1981). After a hearing on the issue, the trial court denied this motion, and the Petitioner's conviction followed after a trial on the merits.

A subsequent appeal to Florida's Fourth District Court of Appeal raised but one issue: "Whether the trial court erred in denying a severance of offenses." Id. at 3. Both that appeal, and a subsequent petition for a writ of certiorari to the Supreme Court of Florida, proved unsuccessful; consequently, Petitioner filed a writ of habeas corpus pursuant to section 2254 of Title 28, United States Code.

The issue presented in the habeas petition, unlike that advanced before the Fourth District Court of Appeal, raises for the first time a federal constitutional question: "[W]hether [p]etitioner was denied due process of law where the Florida state courts denied severance of drug sale counts on the theory that they were part of an 'ongoing investigation.' Memorandum in Support of Petition for Writ of Habeas Corpus, at 1 (filed Apr. 5, 1983). The Magistrate reviewed a host of legal documents, and recommended that "the Petition for Writ of Habeas Corpus be dismissed without prejudice to provide the petitioner with an opportunity to exhaust his available state remedies." Review and Recommendation, at 7 (filed Oct. 28, 1983).

Pursuant to the review procedures spelled out in section 2254(a),[2] this Court must now review *de novo* the Magistrate's Recommendation and Petitioner's objections thereto in order to determine the fate of the petition for writ of habeas corpus. The dispositive issue here is whether Petitioner has exhausted his available state remedies. Finding that he has not, the Court dismisses the petition without prejudice.

### II.

"Federal habeas corpus jurisdiction has been described as an 'untidy area' of the law, *Sunal v. Large*, 332 U.S. 174, 184, 67 S.Ct. 1588, 1593, 91 L.Ed. 1982 (1947) (Frankfurter, J. dissenting), presenting 'many procedural problems which are not easy of solution,' *Price v. Johnson*, 334 U.S. 266, 269, 68 S.Ct. 1049, 1052, 92 L.Ed. 1356 (1948)." *Daye v. Attorney General of State of New York*, 696 F.2d 186, 197 (2d Cir.1982) (en banc). Petitioner's habeas corpus petition is no exception, requiring the Court to interpret and apply a confused area of the law. Although federal law is clear that a habeas petitioner must exhaust his state remedies before seeking relief from the district court, 28 U.S.C.A.

---

1. The trial court sentenced Williams to ten years incarceration on each count, to run concurrently.

2. 28 U.S.C.A. § 2254(a) (1977) provides:
   (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

§§ 2254(b), (c) (1977),[3] the law is substantially less clear as to when a habeas petitioner has satisfied this requirement.

■ The Supreme Court of the United States established a litmus test for determining when a petitioner has exhausted the available state remedies in *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1970). There Justice Brennan explained that before proceeding to the federal district court, the habeas petitioner must provide the state court with a "fair opportunity" to review the constitutional claim by presenting its "substantial equivalent" to the state court. *Id.* at 276–77, 92 S.Ct. at 512–13.

Trouble began when the courts attempted to define what constituted the "substance" of a federal habeas corpus claim. At one extreme, the Supreme Court observed that "[i]t is not enough that all facts necessary to support the federal claim [are] before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, —— U.S. ——, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). At the other extreme, however, the petitioner need not "cit[e] 'book and verse on the federal constitution.' " *Picard*, 404 U.S. at 278, 92 S.Ct. at 513. The Court has not often attempted to give meaning to the broad spectrum between these extremes, and so it has been left to the circuit courts to give "substance" to the exhaustion doctrine.[4]

The United States Court of Appeals for the Second Circuit discussed the exhaustion doctrine at length in *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190–97 (2d Cir.1982). The court adduced four ways in which a habeas petitioner may satisfy the exhaustion requirement without citing "book and verse on the federal constitution:"

■ reliance on pertinent federal cases employing constitutional analysis, [2] reliance on state cases employing constitutional analysis in like fact situations, [3] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and [4] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194.

Petitioner here asserts that he sufficiently alerted the state courts to his constitutional claim by methods two through four above. This Court's task is to determine whether Petitioner's claim is correct.

### III.

### A. Citation of State Cases Employing Constitutional Analysis in Like Fact Situations

■ Petitioner first argues that he raised a due process issue before Florida's Fourth District Court of Appeal by citing to state cases that allegedly employed con-

**3.** 28 U.S.C.A. § 2254(b), (c) (1977) provides:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The exhaustion doctrine requires as a matter of comity, that federal courts not consider a claim in a habeas corpus petition until the state

courts have had an opportunity to act. This rule gives state courts the opportunity to correct federal constitutional errors and minimizes federal interference and disruption of state judicial proceedings. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982); *Galtieri v. Wainwright*, 582 F.2d 348, 353 (5th Cir.1978). The exhaustion requirement does not bar habeas relief if the state remedies are inadequate, fail to afford a full and fair adjudication of the federal contentions raised, or exceptional circumstances of peculiar urgency are demonstrated. *Rose*, 102 S.Ct. at 1202 & n. 7.

**4.** The circuit courts are not in complete agreement over the limits of the exhaustion doctrine. *See* cases cited in *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 194 n. 8 (2d Cir.1982).

stitutional analysis in like fact situations. The Court has reviewed each of these cases, and finds that either no federal issue was in fact ever raised, *e.g., Paul v. State,* 385 So.2d 1371 (Fla.1980) (adopting dissenting opinion of Judge Smith in appellate court, 365 So.2d 1063, 1065 (Fla. 1st DCA 1979)); *Macklin v. State,* 395 So.2d 1219 (Fla. 3d DCA 1981); *Panzavecchia v. State,* 311 So.2d 782 (Fla. 3d DCA 1975), or the constitutional claim asserted in the cited case was not the same as the federal claim on which habeas corpus relief is sought, *e.g., Williams v. State,* 110 So.2d 654 (Fla.1959) (deciding whether death penalty, as applied by juries in rape cases, violates equal protection clause).

The principal case relied on by Petitioner in support of his position is *Paul v. State,* 385 So.2d 1371 (Fla.1980). *Paul* addressed the propriety of consolidating a defendant's trial for sexual offenses committed on separate dates. The supreme court, adopting in part the dissenting appellate opinion of Judge Smith,[5] *id.* at 1372, held that the pretrial consolidation of the alleged sexual offenses was improper because Rule 3.151 of the Florida Rules of Criminal Procedure prohibits the consolidation of similar offenses which are unrelated in terms of time or sequence. Petitioner maintains that the citation *in Paul* to a federal case that applied due process analysis in resolving a challenge to the trial court's joinder of offenses, 365 So.2d at 1067 (citing *United States v. Foutz,* 540 F.2d 733, 737 (4th Cir.1976)), sufficiently alerted the Fourth District Court of Appeal to his own constitutional claim.

The suggestion that a habeas petitioner could satisfy the exhaustion requirement by citing a case *within* a cited case threatens to make a mockery of the exhaustion doctrine. Petitioner's interpretation of the exhaustion requirement places the burden on the reviewing court, and not on the defendant, to determine and apply the relevant constitutional principles; it all but ob-

literates the requirement set forth in *Picard* that a habeas petitioner present the state court with both the factual and legal premises of the claim he asserts in federal court.

The Supreme Court of the United States indicated that it will not tolerate such a misuse of the petition for habeas corpus relief in *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1983). The petitioner in *Harless* had filed his writ of habeas corpus after a jury found him guilty of first degree murder. The petition alleged, *inter alia,* that the trial court's instruction on malice was unconstitutional. After finding that the petitioner had satisfied the exhaustion requirements of section 2254, the district court held the trial court's jury instruction unconstitutional as "inconsistent with the presumption of innocence." —— U.S. at ——, 103 S.Ct. at 277. The United States Court of Appeals for the Sixth Circuit affirmed, reasoning in part that the petitioner had exhausted available state remedies because he had presented to the appellate court the facts on which he based his federal claim, and because his brief had cited a state court decision "predicated solely on state law in which no federal issues were decided, but in which the defendant had argued broadly that failure to properly instruct a jury violates the Sixth and Fourteenth Amendments." *Id.*

The Supreme Court of the United States reversed, holding that the habeas petitioner did not alert the state courts to his due process challenge simply by citing in his brief to a decision predicated solely on state law, in which the defendant in the cited case raised, but the court did not consider, a similar federal claim. The Court reasoned first, that although the defendant in the cited case had argued in federal constitutional terms, the state court had decided no federal issues and had rested its decision solely on state law; and second, the constitutional claim advanced by the defendant in the cited case was not

---

5. The supreme court explained "we make no comment on that portion of Judge Smith's dissent which discusses the so-called '*Williams* Rule,' *Williams v. State,* 110 So.2d 654 (Fla. 1959), of admissibility." 385 So.2d at 1372.

the same as the federal claim on which federal habeas relief was sought in *Harless.* —— U.S. ——, 103 S.Ct. at 278. The Court's language is clear on the point:

> We doubt that a defendant's citation to a state-court decision predicated solely on state law ordinarily will be sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the *cited* case advanced a federal claim. However, it is clear that such a citation is insufficient when, as here, the federal claim asserted in the cited case is not even the same as the federal claim on which federal habeas relief is sought.

*Id.* n. 3, 103 S.Ct. at 278 n. 3.

*Harless* thus counsels that for a habeas petitioner to exhaust available state remedies, he must, at a minimum, cite in his appellate brief to state court cases which are decided on the basis of the same federal claim asserted before the state appellate court. This rule appears to require, almost by necessity, that the petitioner spell out in some detail in his state appellate brief the constitutional issue that might later serve as the basis for the petition for writ of habeas corpus. Any interpretation short of this would permit the petitioner to merely cite to cases in his appellate brief without providing any analysis. *Harless* implicitly requires habeas petitioners to provide the state appeals courts with some explanation, beyond the mere citation to a supporting case, of how the cited case is contextually relevant to the constitutional claim.

In short, the *Harless* decision compels this Court to find meritless Petitioner's first argument in support of his claim that he complied with the exhaustion requirements of section 2254. Relying on a cited case (secondary authority) within a cited case (primary authority) fails to satisfy the *Harless* rule, especially when the primary

case is based solely on state law and does not adjudicate the constitutional claim asserted in the habeas petition.

### B. *Asserting a Legal Claim in Terms so particular as to Suggest a Specific Right Protected by the Constitution*

Petitioner next argues that he implicitly raised his due process claim before the state courts by claiming that the trial court's denial of his motion to sever counts destroyed his presumption of innocence. Although the Supreme Court has not expressly decided whether such a technique will satisfy the exhaustion requirements of section 2254, the *Harless* opinion is instructive. *Harless* recognizes that an improper jury instruction on malice in a murder trial does not automatically raise a due process question regarding defendant's right to a fair trial. By analogy, the due process presumption of innocence, surely as important as the right to a fair trial, is not automatically raised when a trial court denies a motion to sever counts.

The Eleventh Circuit's decision in *Hutchins v. Wainwright,* 715 F.2d 512 (11th Cir. 1983), is even more enlightening. *Hutchins* focused on whether the raising of a hearsay claim is the automatic equivalent of raising a confrontation clause claim. The defendant Hutchins appealed his conviction for armed robbery and assault with intent to commit second degree murder, claiming that "the trial court erred in allowing prosecutorial comments regarding the investigatory officers' encounters with an unidentified third person ...." *Id.* at 517. After the appellate court affirmed the conviction, and after a *pro se* motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure proved unsuccessful, Hutchins filed a petition for writ of habeas corpus in federal district court.[6] The Magistrate con-

---

6. Hutchins' first petition raised four issues, including denial of a speedy trial, exclusion of defense evidence, suppression by the prosecution of favorable evidence, and unconstitutional admission of hearsay testimony. After the district court dismissed the petition without prejudice, Hutchins filed a second petition realleging the grounds for relief previously raised except for the speedy trial claim. In the memorandum of law filed in support of the petition, however, the petitioner raised arguments only in support of the hearsay and exclusion of evidence claims. 715 F.2d at 517–18. Of concern to this Court is

cluded, and the district court agreed, that the trial court's admission of, and the prosecutor's reference in closing arguments to, the hearsay testimony violated Hutchins' rights under the confrontation clause of the sixth amendment.

On appeal before the Eleventh Circuit, the state reasserted its previous position that Hutchins' sixth amendment claim had not been expressly presented to the state courts and, therefore, the defendant had not yet exhausted available state remedies. The court of appeals rejected the state's formalistic approach to the exhaustion doctrine, observing that "[a]lthough the phrasing of the issue on appeal did not use the words 'confrontation clause,' the appeal certainly presented a sixth amendment confrontation clause issue." *Id.* at 518.

Judging from the tone and language of the decision, it seems clear that Hutchins' habeas petition was successful only because the trial record was "replete with objections by defense counsel to the testimony regarding the out-of-court statements of the unidentified informant." *Id.* The court noted that the Fifth Circuit had reached the same result in *Thomas v. Estelle,* 582 F.2d 939 (5th Cir.1978), a case in which the trial record also contained numerous objections by defense counsel to the admission of hearsay evidence. 715 F.2d at 519.

■ Petitioner would have this Court find that a claim of prejudice from a trial court's denial of a motion to sever counts, like a hearsay objection, calls to mind a specific right protected by the Constitution, here the due process clause of the fifth and

fourteenth amendments. *Hutchins* instructs us, however, that the naked assertion of a nonconstitutional claim "is not the automatic equivalent of raising a" constitutional issue. Defense counsel must take some affirmative action to preserve the objection and then reassert it before the state appellate court in order to satisfy the exhaustion requirements of section 2254. The Eleventh Circuit spoke clearly on this point: "[W]hen a criminal defendant perceives a constitutional error during the course of the trial, it is defense counsel's responsibility to raise the error both at trial and on appeal in clear and forthright terms thereby alerting the state to the perceived error." *Id.* at 519.

■ With this background, the Court turns to the specific arguments raised by Petitioner before the trial court and the Fourth District Court of Appeal. Petitioner's appellate brief asserts that the trial court's failure to sever the counts against him was prejudicial and jeopardized his right to presumption of innocence. Initial Brief of Appellant to Fourth District Court of Appeal, at 7 (filed ca. Feb. 11, 1981).[7] The objections raised before the trial court is even less specific. Record on Appeal From Circuit Court Palm Beach County, Florida, at 31–33; Additional Record on Appeal From Circuit Court Palm Beach County, Florida, at 2–5.

Before both state tribunals, Petitioner made no mention of the due process issue, choosing instead to attack the trial court's severance ruling on purely procedural grounds. The comments of Petitioner's

whether Hutchins exhausted the state remedies with regard to the hearsay question.

7. In his state appellate brief, Petitioner cites *State v. Harris,* 356 So.2d 315 (Fla.1978), to bolster his claim that the denial of a motion to sever gives rise to due process problems. The supreme court in *Harris* addressed the constitutionality of Florida Statute section 812.021(3), which provides in pertinent part that upon the third or subsequent conviction for petit larceny, the offender shall be guilty of a felony in the third degree. The defendants charged that the statute was unconstitutional because it deprived them of due process and equal protection and

destroyed the presumption of innocence by including prior convictions in the charging information. Relying on their previous discussion in *Shargaa v. State,* 102 So.2d 809 (Fla.1958), of these constitutional issues in the context of Florida's habitual criminal statute, the court construed section 812.021(3) so as to make it constitutional by holding that it created "a substantive offense to be tried in the circuit court when felony petit larceny is charged, without bringing to the attention of the jury the fact of prior convictions as an element of the new charge." 356 So.2d at 317.

counsel before the trial court prove the point.

The Court: [Defendant] want[s] to sever count one and two....

.    .    .    .    .

Prosecutor: We took the deposition of the agent. It's an undercover agent. He allegedly made two buys at two different locations, one of which was at an apartment house, the other which was in a bar known as the Funk House.....
Defense: But there is no connection at all, other than the same agent made a buy. And it occurred on different dates. I think it would be prejudicial for my client to be tried on both cases at the same time, because we could have just as easily made two different informations, [and] because there are two different buys and no connection between the two buys.
The Court: I think he has an extremely valid point.
Prosecutor: I don't. The rule says that in the case where two or more related offenses are joined. These are definitely related offenses. They are matters where there was one investigation continuing. The case law on it is the case of *Panzavecchia v. State*, 311 So.2d 782.

A short discussion of *Panzavecchia* ensued, after which the trial court denied the defendant's motion to sever the counts. As this exchange demonstrates, the question before the trial court was the procedural propriety of severing the counts, and not whether the failure to sever denied the Petitioner his constitutional right to due process. Although Petitioner suggests in the last paragraph of his brief to the Fourth District Court of Appeal that the failure to sever counts was prejudicial because it undermined the presumption of innocence, Initial Brief of Appellant, at 6–7 (filed ca. Feb. 11, 1981), there is no discussion of the point, no mention of any due process problems, and no analysis of how the controlling constitutional principles apply to the relevant facts in the case. Presented with such a blank slate, it defies logic and law to suggest that the state

courts have ruled on Petitioner's due process claim.

### C. *Alleging a Pattern of Facts Well Within the Mainstream of Constitutional Litigation*

As a last resort, Petitioner suggests that the factual allegations contained in his appellate brief are "well within the mainstream of [due process] litigation," Reply to State's Response to Order to Show Cause, at 5 (filed Oct. 14, 1983), and therefore put the Fourth District Court of Appeal on notice of his constitutional claim. The legal validity of this argument is at best dubious; if valid, however, a review of Petitioner's appellate brief suggests that he has failed to sustain even this position.

The *Harless* decision expressly found that a habeas petitioner's factual allegations *alone* are insufficient to alert the state court to a constitutional claim. Before the state appellate court, the petitioner in *Harless* had presented the facts on which he based his federal claim. The Supreme Court found, however, that "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts ... or that a somewhat similar state-law claim was made." —— U.S. at ——, 103 S.Ct. at 277. In support of this legal proposition, the Court cited to its previous decision in *Picard,* in which the Court denied a writ of habeas corpus because the petitioner had not exhausted the available state remedies. Although the petitioner there had presented "all the facts" to the Massachusetts Supreme Judicial Court, he had not brought to the attention of that tribunal "the constitutional claim ... inherent in those facts ...." 404 U.S. at 277, 92 S.Ct. at 513. *See Daye v. Attorney General of State of New York,* 696 F.2d 186, 201–202 (2d Cir.1982) (Van Graafeiland, J., dissenting).

■ The import of *Harless* notwithstanding, Petitioner's appellate brief failed to allege a pattern of facts that are well within the mainstream of due process litigation. Petitioner's trial and appellate briefs did not cite a single case which finds due proc-

ess problems in a similar factual context.[8] Petitioner's factual account before the state trial and appellate courts emphasizes the procedural defects in the trial court's severance ruling, and does not couch the facts in such a way as to suggest that a due process issue exists. Petitioner uses the facts to support his contention that the failure to sever was improper because the criminal charges were based on separate episodes. The Fourth District Court of Appeal clearly considered this issue, as evidenced by its discussion of the subject in the court's decision. But no mention is made in the appellate court's decision of the constitutional question. This is not surprising because Petitioner's appellate brief lacked any substantive analysis of the due process issue. *But see Daye*, 696 F.2d at 197 (petitioner's argument, supported by numerous factual allegations, that trial judge's evident partiality and his assumption of hostile and prosecutorial stance deprived him of fair trial, held sufficient to alert state court that federal due process claim was being asserted).

### IV.

The Court's holding that Petitioner failed to alert the state appellate court of his due process claim conforms with *Picard* and its progeny, which require the habeas petitioner to present the substance of a federal habeas corpus claim to the state courts. *Hutchins v. Wainwright*, 715 F.2d 512, 519 (11th Cir.1983); *Hall v. State*, 700 F.2d 1333, 1335 (11th Cir.1983) ("In order to exhaust his remedies, a petitioner must assert them [before the state court] so that his claim may be adjudicated on their merits.") The Court's decision also recognizes that state appellate courts should not be expected to conduct a *de novo* constitutional review of every conceivable deficiency in a defendant's conviction. Admittedly, our law expects courts to raise and resolve *sua sponte* constitutional questions presented in a case. But the elaborate appeals process available to a prisoner operates on the

premise that no one will more closely scrutinize a conviction, and work harder for an acquittal, than the convict and his counsel. The incentive and the burden is on them to demonstrate that a mistake has been made, with the court providing assistance if counsel is ineffective or the defect is particularly subtle. Generally, then, the court serves as an arbiter and not as an advocate. Any construct that requires the court to assume both responsibilities as a matter of course threatens to completely overwhelm an already overburdened judiciary.

Accordingly, the Court adopts the Magistrate's Review and Recommendation, and the Petition for Writ of Habeas Corpus be and the same is hereby DISMISSED WITHOUT PREJUDICE to provide Petitioner with an opportunity to exhaust the available state remedies.

---

**8.** The citation to *Paul v. State* and other cases is insufficient to put the appellate court on notice

of Petitioner's constitutional claim. *See supra* Part III(A).